**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| VTRAX TECHNOLOGIES LICENSING, INC., )  | |
| ) | |
| Plaintiff, ) | Civil Action No. 9:10-CV-80369KLR |
| ) | |
| ) | **JURY TRIAL DEMANDED** |
| v. ) | |
| ) | |
| SIEMENS COMMUNICATIONS, INC., ET. AL. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' JOINT OPENING BRIEF ON CLAIM CONSTRUCTION**

Plaintiff vTRAX Technologies Licensing, Inc. has asserted claims 1-3, 6, 8-12, 16-18, 20, and 22-26 of U.S. Patent No. 6,865,268 ("the '268 patent") against Defendants Siemens Communications, Inc., Siemens Enterprise Communications, Inc., Assurity Life Insurance Company, Flagstar Bank, FSB, Avaya Inc., CSX Corporation and Palm Coast Data, LLC (collectively "Defendants").

vTRAX and Defendants dispute how various terms recited in these claims should be construed. Therefore, in accordance with the Court's July 19, 2010 Scheduling Order, Defendants submit this Joint Opening Brief on Claim Construction in support of Defendants' proposed constructions of the disputed claim terms of the '268 patent.

# TABLE OF CONTENTS

I.      Background ........................................................................................................................ 1

II.     Legal Standards Governing Claim Construction ................................................................ 1

III.    The Court Should Adopt Defendants' Proposed Constructions .......................................... 2

    A.      "call ticket" and "ticket" ........................................................................................... 3

    B.      "on-line call ticket request form" .............................................................................. 5

    C.      "creating and submitting a call ticket for resolution" ............................................... 8

    D.      "on-call board user interface" .................................................................................... 9

    E.      "present status of each member and a primary contact number" ............................. 12

    F.      "plurality of icons representing communications options for each member based on the member's status" ......................................................................................................................... 15

    G.      "automatically" ......................................................................................................... 16

    H.      "icons" ...................................................................................................................... 18

    I.      "hyperlinks" .............................................................................................................. 19

    J.      "plurality of icons that are accessible to each member and that generate hyperlinks" ..... 22

    K.      "plurality of additional functions associated with call tracking and resolution" ............. 23

    L.      "float board" ............................................................................................................. 25

    M.       "dynamic permissions menu" ................................................................................ 26

    N.      "dynamic electronic mail" ........................................................................................ 28

    O.      "personal electronic notes" ....................................................................................... 29

    P.      "profile" .................................................................................................................... 30

IV.     Conclusion ...................................................................................................................... 30

## I.  BACKGROUND

The '268 patent describes and claims an interactive web-based "On-Call Board display" for tracking and locating call tickets and communicating on the Internet with online members. Exh. 1, Abstract.  The '268 patent specification specifically limits "the present [] invention" to a "completely web-based" "electronic Customer Relationship Management (eCRM) portal engine" that is controlled and used "entirely from a web browser application, with no need for client software."  Exh. 1, '268 patent, 2:59-63.  Thus, the '268 patent relates to an Internet web-based eCRM system used in call centers.  Exh. 1, 1:23-27.  Nonetheless, vTRAX has chosen to ignore the clear language of the specification and the prosecution history in an attempt to create an infringement case where one does not exist.  Specifically, vTRAX's proposed constructions attempt to enlarge the claims to include call centers systems that are <u>not</u> "entirely from a web browser application," <u>not</u> "completely web-based," and <u>not</u> "on-line" as those terms were used in the specification as described in every embodiment of the patent.  vTRAX's proposed constructions also attempt to recapture the exact same subject matter it previously disclaimed during the patent's reexamination.  The Federal Circuit has long-held that such attempts to improperly enlarge a patent's scope after issuance should be rejected.  *See Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) ("[C]laims cannot enlarge what is patented beyond what the inventor has described as the invention"); *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover").

## II.  LEGAL STANDARDS GOVERNING CLAIM CONSTRUCTION

Proper claim construction requires an examination of the claim language, the patent specification, and the prosecution history.  *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The Federal Circuit has repeatedly recognized the importance of

the specification to claim construction: "[u]sually it is dispositive; it is the single best guide to the meaning of a disputed term." *Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F.3d 1010, 1018-19 (Fed. Cir. 2009) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*)).  In *Phillips*, the Federal Circuit further explained that the "construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316.  Patent claim terms are given the "meaning that [they] would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1027.

The '268 patent was filed on January 16, 2002, and claims the benefit of a provisional application filed January 16, 2001.  Exh. 2, U.S. Provisional Patent Application No. 60/261,421. Although vTRAX has not demonstrated that the '268 patent claims are entitled to a 2001 invention date, Defendants note that the relevant time period of the invention is no later than January 16, 2002 and may be as early as January 16, 2001.

The process of discerning how a person of ordinary skill in the art at the time of the invention would read particular terms therefore begins "by reviewing the same resources as would that person, *viz.*, the patent specification and the prosecution history." *Id.*  Extrinsic evidence (expert and inventor testimony, dictionaries and treatises) can shed "useful light" on the relevant art but is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips* at 1317.  The Federal Circuit has, however, recognized that technical dictionaries may enable a court to better understand how one of skill in the art might use the claim terms. *Phillips* at 1318.

## III.  THE COURT SHOULD ADOPT DEFENDANTS' PROPOSED CONSTRUCTIONS

The parties' proposed claim terms and proposed constructions, including intrinsic and extrinsic evidence upon which each party intends to rely, are attached as Exhibits 3 and 4.

Defendants' position regarding each of these terms is provided below.

### A.  "call ticket" (Claims 1, 8, 16, and 22) and "ticket" (Claims 9 and 23)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| a report stored in a technical support database that contains pertinent information on a single technical support issue as reported by a customer, including a description of the issue | an electronic record of a customer contact or request for service |

The fundamental issue in dispute is whether a "call ticket" must include information about a problem as described in the specification, or if it can just be any record of a call, *i.e.*, "Bob called," as suggested by vTRAX's proposal.  Defendants contend that the patent specification and prosecution history of the '268 patent compel the conclusion that "call ticket" and "ticket" are properly construed to mean:

> a report stored in a technical support database that contains pertinent information on a single technical support issue as reported by a customer, including a description of the issue.

Looking to the specification, a call ticket – also referred to as a "trouble ticket" in the specification – is created by a customer or a member based on a customer's request for service. Exh. 1 at 4:1-4, 9:47-49.  Consistent with the inventors' use of the term in the '268 patent specification, a call ticket is stored in a database and includes many types of information, including, at a minimum, a description of a customer's technical support issue.  Exh. 1 at 4:33-34.  For example, the specification states that call tickets are stored in a database that "provides full life cycle tracking of calls from call submission to problem resolution."  *Id*.  Information in the call ticket database includes the ticket number, status, priority, category/problem type, original ticket owner, support person assigned, and customer name.  *Id.* at 4:30-33.  Additionally, "each call ticket enables a direct link to customer profile information to assist in trouble resolution" and also includes case history information.  *Id.* at 4:34-37.

This use of "call ticket" in the '268 patent as including information about a problem is

consistent with the ordinary meaning as shown by extrinsic evidence.  For example, Newton's

Telecom Dictionary defines "call ticket" as:

> A report maintained by a manufacturer in its Technical Support Database
> that contains pertinent information on a single technical support issue as
> reported by a customer.  Information typically includes:  call tracking
> number (CTN), customer contact information, system configuration
> information, customer issue description, actions taken by manufacturer,
> actions suggested to and taken by customer, and a record of all customer
> contact events regarding the technical support issue.

Exh. 10, Newton's Telecom Dictionary, 16th Expanded and Updated Edition (2000), at 141-142.

Contrary to all evidence, vTRAX proposes that "call ticket" be construed as "an

electronic record of a customer contact *or* request for service" (emphasis added).  vTRAX's

proposed construction ignores the specification's requirement that the call ticket include *both* a

customer contact *and* a request for service, and that call tickets allow for "full life cycle tracking

of calls from call submission to problem resolution."  Exh. 1 at 4:32-34.  Contrary to vTRAX's

proposal, the specification clearly requires that a "call ticket" include a record of customer

contact *and* a record of a request for service.  *See, e.g., id.* at 4:30-33 ("The ticket database can

be viewed by . . . category/problem type . . . or by customer name.")

vTRAX cites various patents cited in the '268 patent's file history as supporting its

proposed construction of "call ticket."  Exh. 4 at p. 6.  However, the cited patents provide no

such support.  At best, the references cited by vTRAX support Defendants' proposed

construction, that a "call ticket" refers to a report stored in a technical support database that

contains pertinent information on a single technical support issue as reported by a customer,

including a description of the issue.  *See, e.g.*, U.S. Patent No. 6,219,648 at 6:35-53 ("ticket

reporting and tracking system for inputting trouble tickets related to problems experienced by

customers"); U.S. Patent No. 6,516,055 at 4:4-9 ("information related to the subscriber's trouble

report [] stored electronically on the trouble report input system and the trouble report resolution

system"); U.S. Patent No. 6,032,184 at 3:31-4:26; U.S. Patent No. 6,505,166 at 3:14-19, 5:29-35, 6:7-17.

vTRAX's proposed construction of "call ticket" is not consistent with the specification and the understanding of that term by one of ordinary skill in the art at the time of the invention, as evidenced by the dictionary definition and use of the term in the prior art references. Accordingly, the Court should reject vTRAX's proposed construction and adopt the construction proposed by Defendants.

Finally, Defendants' contend that the term "call ticket" in claims 1, 8, 16, and 22, has the same meaning as the term "ticket" in claims 9 and 23. These terms are used interchangeably throughout the '268 patent specification. *See, e.g.,* Exh. 1 at 4:30-37 & 9:41-52. vTRAX initially agreed with the Defendants, both in its preliminary constructions, and in the subsequent meet-and-confer with Defendants' counsel, that "call ticket" and "ticket" have the same meaning. Exh. 4, at 8; Exh. 9, email from Anne Shyjan to John Herman, dated Jan. 21, 2011. However, the day before the parties' opening claim construction briefs were due, vTRAX changed its position and informed the Defendants for the first time that it plans to argue that "ticket" does not mean "call ticket." *See* Exh. 9. As of the filing of this brief, vTRAX has still not provided the Defendants with its proposed construction of "ticket," or any support for its proposed construction. *Id.* Accordingly, Defendants' reserve the right to strike any future proposed construction for "ticket" provided by vTRAX that is different from that set forth in vTRAX's preliminary constructions.

**B. "on-line call ticket request form" (Claims 1 and 16)**

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| a web browser based form including at least one data entry field for entry of a technical support issue. | "on-line call ticket request form": an automated computer-based data entry form for presenting a call ticket. |

| An on-line call ticket request form is not a recording or screen pop with information that has been collected from a caller, such as account numbers, credit card numbers, or service requests. An on-line call ticket request form is also not a display of call information, call histories, call notes, or caller ID. | "on-line": capable of communicating with or being controlled by a computer.<br><br>"form": a structured electronic document with spaces reserved for data.<br><br>See "call ticket" above. |
|---|---|

The patent specification and prosecution history of the '268 patent support Defendants' construction. Defendant's construction includes two parts. The first sentence reflects the '268 patent specification's only description of a request form as that of a "web form" used by a customer to initiate a request for service. Exh. 1 at 9:44-58 ("The ticket process begins when a customer fills out a web form requesting service."). The description provided in the specification is consistent with Defendants' proposed construction for "on-line call ticket request form." The second two sentences of Defendants' construction represent disclaimers made during the reexamination of the '268 patent to distinguish the claims from prior art call systems.

vTRAX proposes that "on-line call ticket request form" should be construed as "an automated computer based data entry form for presenting a call ticket," that "on-line" should be construed as "capable of communicating with or being controlled by a computer," and that "form" should be construed as "a structured electronic document with spaces reserved for data."

Defendants disagree. First, Defendants contend that "online" signifies a web connection, not merely a computer connection, as asserted by vTRAX. The specification is clear that "on-line" request forms are submitted on the web. Exh. 1 at 9:47-49 ("The ticket process begins when a customer fills out a web form requesting service"). Indeed, it is clear that the patentee intended the system to be implemented in a web-based environment. Exh. 1 at 2:59-63 ("The [electronic Customer Relationship Management' portal engine is completely web-based and installed at an organization web portal for access by members (employees) and customers of the

-6-

organization"). The "web" in the foregoing is the World Wide Web (WWW) which precedes most Internet addresses such as www.google.com. The '268 patent system includes a "universal interface" so that "valuable customer information can be shared *across the web* from anywhere at any time." *Id.* at 3:53-61. Each of the four "portals" of the system, including the "Customer Portal, is "exercised *entirely from a web browser application*." *Id.* at 2:62-63 & 3:63-4:67 (emphasis added); *see also id.* at 1:1-3 (Title: "Dynamic, Real-Time Call Tracking for **Web-Based** Customer Relationship Management."). vTRAX's interpretation of this element eviscerates the heart of the alleged invention by merely requiring that the system is either "capable of communicating with **or** being controlled by a computer." Virtually anything in the world is "capable" of being controlled by a computer or communicating with a computer. vTRAX's proposal writes "on-line" entirely out of the claim.

Additionally, vTRAX's proposed construction of "on-line call ticket request form" is inconsistent with vTRAX's and the Examiner's statements made during the patent's reexamination. For example, vTRAX argued during reexamination that the prior art references *Clare* and *Ravenscroft* did not disclose an "on-line call ticket request form." Exh. 5 at 10-11. The Examiner, in his statement of reasons for patentability and/or confirmation, agreed. Exh. 8 at 2-3. *Ravenscroft* discloses a call center that includes a voice response unit (VRU) that collects a caller's information including account numbers, credit card numbers and service requests. Exh. 7 at 4:52-5:4. The information may be displayed to an agent in the form of a "screen pop." *Id.* Thus, *Ravenscroft* meets the construction proposed by vTRAX, "an automated computer-based data entry form for presenting a call ticket."

*Ravenscroft* discloses a "telecommunication network" including a call center, a public switched telephone network, and data links implemented by a local area network (LAN). Exh.

7:3:28-34 & 4:18-33.  However, vTRAX and the Examiner both agreed that *Ravenscroft* does not disclose an **on-line** system.  Therefore, by distinguishing its own claims from *Ravenscroft* based on the term "online," vTRAX disclaimed the scope of claim coverage for "on-line" that it now proposes the term should include, *i.e.*, "capable of communicating with **or** being controlled by a computer."   *Ravenscroft* shows exactly what vTRAX disclaimed and what it seeks to recapture.  *Ekchian v. Home Depot, Inc.*, 104 F.3d at 1304.

Similarly, *Clare* discloses an automated call distribution system that stores call information in memory and comprises computing devices coupled via a local area network to a telephone system.  Exh. 6 at 7:19-20.  Calls in *Clare* may be queued as they arrive until an agent becomes available.  *Id.* at 5:19-21.  vTRAX's proposed construction, an "automated computer based data entry form for presenting a call ticket," is so broad that it encompasses the *Clare* and *Ravenscroft* teachings, contrary to vTRAX's arguments made in prosecution.  The Court cannot, under properly applied claim construction principles, adopt a construction that contradicts vTRAX's statements in the reexamination that *Ravenscroft* and *Clare* do not disclose an "<u>on-line</u> call ticket request form."

Accordingly, the Court should reject vTRAX's proposed construction of "on-line call ticket request form" as inconsistent with the '268 patent specification and inventor arguments made to the U.S. patent office in prosecution, and should adopt the construction proposed by Defendants.

**C.  "creating and submitting a call ticket for resolution" (Claim 1 and 16)**

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| inputting data that comprises a call ticket into the online call ticket request form and passing the data over a communications network so the technical support issue identified by the call ticket | initiating and presenting a call ticket to be resolved |

| can be resolved | |
|---|---|

Defendants' construction is consistent with the '268 patent specification's only description of creating and submitting a call ticket:

> A call ticket is created (functional block 70) by a customer 62 logging onto the call tracking and resolution management system server which then becomes viewable by an assigned member as indicated in functional block 54. The ticket process begins when a customer fills out a web form requesting service. The member can also start a ticket. Once the customer submits a ticket, email containing a link to his ticket is automatically sent where the customer can view the progress of the ticket (functional block 64).

Exh. 1 at 9:44-52.

vTRAX's proposed construction, that "creating and submitting a call ticket for resolution" should be construed as "initiating and presenting a call ticket to be resolved," is vague, overly broad, and inconsistent with the specification and prosecution history.

First, there is nothing in the '268 patent specification to support that "creating" means "initiating." "Creating" as used in the context of creating a call ticket refers to actually creating the call ticket by inputting information into a call ticket request form, not merely initiating the process. Exh. 1 at 9:44-49.

Similarly, there is nothing in the '268 patent specification to support that "submitting" means "presenting." "Submitting," as used in the context of submitting a call ticket, refers to an act performed by a customer or member logged on to the system. Exh. 1 at 9:44-52. It is clear from the patent specification that "submitting" must occur over a communications network and is not merely "presenting."

### D.   "on-call board" / "on-call board user interface" (Claims 1 and 16)

| Defendants' Proposed Construction | vTRAX's Proposed Construction |
|---|---|
| "on-call board user interface": a web browser window that concurrently displays [a plurality of members that are | "on-call board": an interactive web-based application for use by members who are designated to respond to call tickets |

| assigned and available to respond to a call ticket from a customer…] | "on-call board user interface": the user interface of an interactive web-based application for use by members who are designated to respond to call tickets<br><br>"user interface": the portion of an application with which a user interacts |
| --- | --- |

Although the terms "web" or "web-based" are not expressly recited in the claims, both parties agree that the "on-call board user interface" of claims 1 and 16 must be a web-based user interface.  Thus, the on-call board user interface cannot be a user interface of a so-called "standalone" software application (e.g., Microsoft Word, Adobe Acrobat, etc.) that can operate independently on a user's computer without connecting to any outside network or resources.

The Defendants' respectfully submit that the Court should adopt "a web browser window" as the proper construction, rather than a "web-based application," as proposed by vTRAX.  There are many "web-based" applications that run entirely on a computer such as the iPad, however, these are not on-line browser based in the sense of this invention.  Further, every embodiment of the on-call board user interface in the '268 patent is shown or described as being a "web browser window."  *See, e.g.*, Exh. 1 at FIGS. 1-7, 2:59-63 & 9:2-6.  In fact, the first sentence of the parent provisional application, which the patentee expressly incorporated by reference into the '268 patent specification, introduces the alleged invention as a "software application that runs on an internet server and is accessed and controlled through an internet browser."  Exh. 2 at 1.  *See Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) ("Incorporation by reference provides a method for integrating material from various documents into a host document … by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein.")(internal citations omitted). The '268 patent specification goes on to describe the

alleged invention as "<u>completely web-based</u>," and states that "[i]ts control and use is exercised entirely from a web browser application, with no need for client software."  Exh. 1 at 2:62-63. *See Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) ("[C]laims cannot enlarge what is patented beyond what the inventor has described as the invention."), quoting *Networld, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001); *see also Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1382 (Fed. Cir. 1999).  Thus, it is abundantly clear from the '268 patent that the "on-call board user interface" must be a "web-browser window."

The Court should also adopt the remainder of the Defendants' proposed construction.  As shown in FIG. 1, and described in every embodiment in the '268 patent, the "on-call board" *concurrently* displays information identifying a plurality of members that are assigned and available to respond to call tickets.  *See* Exh. 1 at FIG. 1, 1:40-60 & 4:38-53.  A user interface that requires users to navigate to multiple screens, views, and submenus, in order to view member information is not a "board" under any reasonable definition of the term.  *See* Ex. 10 (defining "displayboards" that project information able to be seen by all agents in a call center); Exh. 11, Keith Dawson, *Call Center Handbook*, at 189-190, Telecom Books, (1999).  An "on-call board" must be a "board."  This term cannot encompass web applications that require users to visit different screens, views, and submenus to retrieve the on-call board member information.  Thus, vTRAX's proposed construction is improper because it would permit "on-call boards" that are not "boards" in any way, shape, or form.

Finally, the Court should reject vTRAX's attempt to add the additional limitation "for use by members who are designated to respond to call tickets," into the term "on-call board."  Although the on-call board in claims 1 and 16 *displays* information about "a plurality of members," it does not follow that the on-call board itself must be "for use by" those members.

There is no support in the '268 patent to justify importing this unrecited requirement into the claims. To the contrary, the '268 patent describes several instances in which the on-call board may be used by other types of users, such as customers, managers, or administrators, who are not "designated to respond to call tickets." For example, FIG. 1 shows an on-call board with a dynamic permission menu 160, including a "Management Menu" and an "Admin Menu" that are specifically designed for use by managers and administrators. Exh. 1 at 7:21-27. Thus, the on-call board is not only used by members designated to respond to call tickets, but can be used by other types of users as well. vTRAX's improper construction is an attempt to save validity of these claims by excluding the many prior art on-call boards that are used by managers, administrators, and customers. However, there is simply no reason, and no support within the claims, specification, or prosecution history of the '268 patent to unnecessarily limit the claims to require that the on-call board must be "for use by members designated to respond to call tickets."

  E.  **"present status of each member and a primary contact number" (Claims 1 and 16)**

| Defendants' Proposed Construction | vTRAX's Proposed Construction |
|---|---|
| the current status input by each member (e.g., back in one hour, in the office, etc. and not simply a login trigger) and the best telephone number at which the member can be reached. | a current state of activity or availability of each member and a member's principal telephone number |

The parties' proposed constructions for "a present status of each member and a primary contact number" differ in two important respects. The first is the meaning of the term "status." In the context of '268 patent, "status" is well-defined by the specification. *See* Exh. 1 at Abstract, FIG. 1, 1: 46-51 & 6:13-37 & 6:47-52 & 7:55-64. In fact, the '268 patent specification describes two distinct types of members' status, both of which are displayed on the on-call board user interface.

First, each member on the board has a "system" status (also called a "logged in status"), represented by the "Online" column 124 in FIG. 1. *See* Exh. 1 at 6:8-13 & 43-47 & 7:55-64. A member's system status is not directly set by the member, but rather is set automatically by the on-call board application based on the member's current connection state with the system (i.e., logged in, online, logged off, or disconnected). *Id.* The second type of member status described in the '268 patent is the member's "availability" status, which corresponds to the "Status" column 130 in FIG. 1. *See id.* at 6:15-23 & 42-56. Members can directly input their own availability status by selecting an appropriate status from a drop down list to notify others of their current availability (e.g., "In the office…," "Be back in one hour…," "Do not disturb…," etc.). *Id* at FIG. 1 (showing "status" and "online" columns)

In claims 1 and 16, the term "a present status of each member" refers to the member's availability status, ***not*** the member's system/online status. Although the term "status," when considered in isolation, could describe either type of status, the use of this term within the context of the claims renders the question beyond dispute because the next limitation of claims 1 and 16 recites, "generating and displaying on the on-call board … communication options based on the member's status." *Id.* at claims 1 and 16. This status can only be the availability status input by the member. The '268 patent specification repeatedly describes that the options for communicating with members on the on-call board are based on the availability status input by the members, and not simply the members' logged in status:

> "Communication options are driven by user input of status information that provides a finer granularity over a simple login trigger."

Exh. 1, 1:49-51.

> "The On-Call Board engine then automatically generates the appropriate communication channels/options according to the availability status of the call board member."

*Id.* at 6:18-20.

> "Each individual member selects his respective availability 'status', (column 130) from a drop down list to notify others of his current availability, and thus the appropriate means to quickly contact him. This selection also drives the On-Call Board engine to display the appropriate contact options/channels.

*Id.* at 6:47-52. Thus, it is abundantly clear from the '268 patent claims and specification that that "present status of each member" refers to the availability status input by the member, and not simply the member's logged in status automatically determined by the system.

In contrast, vTRAX's proposed construction of "status" improperly ignores the '268 patent specification and prosecution history. *Phillips*, 415 F.3d at 1315. vTRAX proposes a plain-meaning definition of "status" broad enough to encompass either "availability" status input by a member and "system" status (or logged in status) automatically set by the system, even though the '268 patent specification and prosecution history are abundantly clear that "communications options … based on the member's status" in claims 1 and 16 refers only to "availability" status input by a member and not to "system" status. Accordingly, the Court should reject vTRAX's erroneous construction, and should construe "a present status of each member" to mean "the current status input by each member (*e.g.*, back in one hour, in the office, etc. and not simply a login trigger)."

The parties' proposed constructions also differ with respect to the "primary contact number." Under vTRAX's proposed construction, this limitation only requires displaying a single telephone number anywhere on the on-call board; it does not require displaying a telephone number for each member on the on-call board, or even that the displayed telephone number is associated with any of the member's listed on the on-call board. Based on this erroneous proposed construction, and vTRAX's Infringement Contentions, it appears that vTRAX will argue that any telephone number whatsoever, such as the number of the person

-14-

using the on-call board user interface, would satisfy this limitation.  The Court should reject vTRAX's improper construction.  The "primary contact number" must, at the very least, be a telephone number of one of the member's displayed in the on-call board user interface.  *See* Exh. 1 at FIG. 1 (element 140), 6:28-37 & 8:50-55.  Furthermore, despite the ambiguous wording of this disputed phrase, it is clear from the '268 patent specification that each and every embodiment of the on-call board user interface displays a primary telephone number for each member.  *Id.*   Accordingly, the Court should construe the "primary telephone number" to mean "the best telephone number at which the member can be reached."

**F.  "plurality of icons representing communications options for each member based on the member's status" (Claims 1 and 16)**

| Defendants' Proposed Construction | vTRAX's Proposed Construction |
|---|---|
| two or more icons for each member of the plurality of members, each icon representing a different channel of communication (such as email, chat, voice over IP, Pager, or phone) by which that member can be contacted. The icons displayed for each member change based on the status input by that member. | two or more images or symbols representing alternatives for communicating with a member, depending on the member's status |

Preliminarily, "status" as recited in this limitation properly refers to "a present status of each member" recited in the previous limitation in each of claims 1 and 16.  Therefore, the options available for communicating with each member via the on-call board are based on the availability status input by each member into the on-call board user interface.  *See* Exh. 1, FIG. 1 ('Status' column 130), 1:49-51 & 6:18-20 & 47-52.

The parties' proposed constructions differ as to the meaning of "communication options." The '268 patent specification uses the term communication "options" synonymously with communication "channels."  *See, e.g.*, Exh. 1 at 6:18-20 ("The On-Call Board engine then automatically generates the appropriate communication channels/options according to the

availability status of the call board member"). Further, every embodiment in the '268 patent describes the same set of communication channels/options that are based on the member's status: email, chat, voice over IP, pager, and phone. *Id.* at FIG. 1 (elements 120, 140, 142, 144, 146), 6:18-36. Accordingly, the Court should adopt Defendants' proposed construction with respect to the meaning of the term "communication options."

In contrast, vTRAX's proposed construction simply replaces the phrase "communication options" with "alternatives for communicating," language not helpful to a fact finder. vTRAX's construction makes no attempt to define what "communication options" means in the context of the '268 patent, and specifically within the on-call board user interface. *Id.* at FIG. 1, 6:18-36.

The final sentence of Defendants' proposed construction also reflects the claim language by making clear that the options for communicating with a member via the on-call board are based on the status of <u>that</u> member, and not the status of some other member (*e.g.*, a member using the on-call board to initiate communication with the first member). In contrast, vTRAX's proposed construction attempts to rewrite the claim such that icons need only be present for "a" member, not "each" member.

### G.  "automatically" (Claims 1 and 16)

| Defendants' Proposed Construction | vTRAX's Proposed Construction |
|---|---|
| occurring without human interaction | operating under program control |

"Automatically," means "occurring without human interaction. Exh. 12, Macmillan English Dictionary, American English Ed.[1]; Exh. 13, Cambridge Advanced Learner's Dictionary[2]; Exh. 14, The American Heritage College Dictionary, 3rd Ed., Houghton Mifflin Company, Boston (2000), at 93. *See also, Omax Corp. v. Flow International Corp.*, 2006 U.S.

---

[1] Printed from http://www.macmillandictionary.com/dictionary/american/automatically on Jan. 21, 2011.
[2] Printed from http://dictionary.cambridge.org/dictionary/british/automatically_1 on Jan. 21, 2011.

Dist. LEXIS 81914 (W.D. Wash., Nov. 7, 2006) at *6-7.  This customary definition is also entirely consistent with the '268 patent specification.  For example, the specification states, "[t]he On-Call Board *automatically* refreshes at a presettable rate, but also will refresh when a feature is selected or a change is made to the On-Call Board, such as a change in status."  Exh. 1 at 8:6-9 (emphasis added).  In other words, an "automatic" refresh of the on-call board user interface is not prompted by any user interaction.  The '268 patent specification also touts the advantages of "automatically" refreshing the on-call board, as providing "quick and real-time visibility to each member's availability."  *Id.* at 6:1-5.

By contrast, vTRAX's proposed construction, "operating under program control," renders this claim term meaningless.  In the software context, all steps performed by software are, by definition, "operating under program control."  Further, the presence of the term "automatically" before "generating and displaying … a plurality of icons representing communications options for each member based on the member's status," and its omission prior to "generating and displaying [the] on-call board user interface," in claims 1 and 16 indicates that this term had significance to the patentee.  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006); *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."); *see also Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (refusing to adopt a claim construction which would render a claim limitation meaningless); *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305-07 (Fed. Cir. 2000). vTRAX's proposed construction ignores this principle.  The term "automatically" necessarily has a specific meaning in the claims, that is, displaying / updating the communications options icons on the on-call board "without human interaction."

### H.  "icons" (Claims 1 and 16)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| a graphic symbol | images or symbols used to represent hyperlinks, programs, files, computers, members, status, or other entities in a user interface |

Within each of claims 1 and 16, "icons" is used twice: first within the phrase "plurality of icons representing communications options" and second within the phrase "plurality of icons that are accessible to each member and that generate hyperlinks to a plurality of additional functions."  Defendants contend that the patent specification and prosecution history of the '268 patent compel the conclusion that "icons" is properly construed to mean "graphic symbols."

Throughout the specification, "icon" is consistently used to reference a graphic symbol. The specification states that the On-Call Board "automatically generates the appropriate communication channels/options according to the availability status of the call board member." Exh. 1 at 6:18-20.  For example, if a member is logged into the system and has a status of "in the office," the chat and eTalk icons are displayed on the On-Call Board.  *Id.* at 6:20-23 & 8:6-7.  As depicted in Figure 1, the eTalk icon 144 is a graphic symbol of a telephone receiver.  *Id.* at FIG. 1 and 8:6-7.  Similarly, the chat icon 142 is a graphic symbol of two heads.  *Id.* at FIG. 1 and 8:3-5.

Additionally, the On-Call Board contains "graphically represented hyperlinks that allow access to certain features and functions," including a news icon 102, a mail icon 104, an organizational chart icon 106, and a calendar icon 108.  *Id.* at 7:28-49.  As depicted in Figure 1, each of the icons 102, 104, 106, and 108 is a graphic symbol.  *Id.* at FIG. 1 and 7:28-49.  The news icon 102 is a graphic representation of a newspaper and mail icon 104 is a graphic representation of three envelopes.  *Id.* at FIG. 1 and 7:28-8:27.

vTRAX proposes that "icons" should be construed to mean "images or symbols used to

represent hyperlinks, programs, files, computers, members, status, or other entities in a user interface." vTRAX's proposed construction should be rejected, first, because vTRAX will argue that "symbols" broadly covers letters or words. It is clear from the '268 patent specification that an "icon" must be a graphic image and not merely a "symbol" such as words in a menu. Additionally, in the context of how "icon" was defined in various general purpose dictionaries available at the time the patent was filed on January 16, 2002, it is clearly a graphic or picture. These definitions make clear that "icon," as used at the time of the '268 patent filing, refers to a picture or graphic image. For example, Merriam-Webster's Collegiate Dictionary defines "icon" as:

> a graphic symbol on a computer display screen that usually suggests the type of object represented or the purpose of an available function.

Exh. 15, Merriam-Webster's Collegiate Dictionary, 10th Ed., 2001, at 573. Similarly, other general purpose dictionaries define "icon" as "a picture on a screen that represents a specific file, directory, window, option, or program." *See, e.g.*, Exh. 14 at 673; Exh. 16 [3] [4].

vTRAX's proposed construction of "icons" is vague and confusing, lacks support in the specification, and is inconsistent with the common usage of that term and the claim language itself. Accordingly, the Court should reject vTRAX's proposed construction and adopt the construction proposed by Defendants.

### I. "hyperlinks" (Claims 1, 3, 8, 16, 18, and 22)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| a connection from one part of a page on the | connections between elements of a hypertext |

---

[3] Printed from http://education.yahoo.com/reference/dictionary/entry/icon on Jan. 21, 2011.

[4] Additionally, the Dictionary of Computer and Internet Terms defines "icon" as "a small picture on a computer screen that represents a particular object, operation, or group of files. Icons are used extensively in graphical user interfaces . . . ." Exh. 17, *Dictionary of Computer and Internet Terms*, 6th Ed., Barron's Educational Series, Inc., New York at 229 (1998).

| Internet to another page, either on the same site or a distant site | document, such as icons, words, or symbols, and other elements, documents, or resources of a computer system, such as text, images, documents, files, data, or programs |
|---|---|

Defendants propose that "hyperlinks" (claims 1, 3, 16, 18) (or "links" (claims 8, 22)) be construed to be the connection between the On-Call Board and the associated additional call-tracking functions—"a connection from one part of a page on the Internet to another page, either on the same site or a distant site." This construction, unlike vTRAX's proposed construction, takes into account the overall patent description of an eCRM that is completely web-based, with no need for client software. vTRAX is attempting to recapture the ground it gave up in its characterization of the claims during prosecution. See above, subsection B.

As defined by Newton's Telecom Dictionary, a hyperlink is "a link from one part of a page on the Internet to another page, either on the same site or a distant site." Exh. 10 at 416. In effect, a hyperlink is the "way to connect two Internet resources via a simple word or phrases on which a user can click to start the connection." *Id.* "Hyperlink" has been previously construed to mean "a connection from a web resource to another." *Girafa.com, Inc. v. IAC Search & Media, Inc., et al.*, 2009 U.S. Dist. LEXIS 84405 at *42 (D. Del., Sep. 15, 2009).

The '268 patent's specification supports this definition of hyperlinks. As previously discussed, the specification routinely defines the eCRM system as *web-based*:

> "The present invention provides a method and computer product for locating and tracking the status of call (e.g., trouble) tickets, and communicating asynchronously and synchronously with online members or employees within an organization through an interactive, *web-based, on-call board application*." Exh. 1, 1:30-35 (emphasis added).

> "The present electronic Customer Relationship Management (eCRM) *portal engine* invention provides call tracking management with interactive end-user tools that allow the enduser, whether a potential customer, customer, or an employee to submit service/call requests via the *web*, e-mail, and/or telephone. The

eCRM portal engine is completely *web-based* and installed at an organization *web portal* for access by members (employees) and customers of the organization.  Its control and use is exercised entirely from a *web browser* application, with no need for client software." *Id.* at 2:54-63 (emphasis added).

"Employee Portal: an enterprise-wide *web-based* solution that combines robust call management functionality, resource management, collaboration and communications tools, and *relevant Internet content* thereby maximizing the efficiency of service teams." *Id.* at 4:20-24 (emphasis added).

Therefore, because they are part of a web-based eCRM structure, hyperlinks must act in a web-based space.

Further, consistent with the general definition of hyperlinks, the specification discloses that the "hyperlinks" link a user to different available call-tracking applications and functions, or what could be classified as different web pages, in the eCRM system.  The specification states the eCRM system windows "contain hyperlinks to the eCRM portal engine application functions." *Id.* at 7:6-7.  By clicking a mouse on a hyperlink, the hyperlink will link the user to specific call-tracking functions, such as a "Create Ticket" link (to open a new call ticket), "Open Ticket" link (a log of all completed tickets), or "Archived Ticket" link (opens a log of all archived calls or tickets). *Id.* at 7:4-27.  Therefore, a hyperlink takes the user from an On-Call Board window (one page) to a specific function (another page).  The specification supports Defendants' construction.

vTRAX's proposed construction, on the contrary, lacks any support from the specification.  Instead, vTRAX's interpretation allows a connection between any elements of "hypertext" documents in a single computer.  However, the specification describes a *web-based* eCRM that *does not require any client-based software*, software that requires web access to properly function.   *Id.* at 2:54-63.   While hyperlinks may connect hypertext documents, hyperlinks as provided in the '268 patent must necessarily serve as connections from one Internet

location to another (*e.g.*, one Internet based hypertext document to another).  *Id.*

**J.  "plurality of icons that are accessible to each member and that generate hyperlinks" (Claims 1 and 16)**

| Defendants' Proposed Construction | vTRAX's Proposed Construction |
|---|---|
| two or more icons on the on-call board that are visible to each member. The icons, when clicked by a member, bring one or more hyperlinks into existence. | two or more images or symbols representing hyperlinks that may be selected by a member |

"Courts cannot rewrite claim language."  *Helmsderfer v. Bobrick Washroom Equipment, Inc.*, 527 F. 3d 1379, 1383-84 (Fed. Cir. 2008)*; see also K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee."); *Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) ("[C]ourts can neither broaden nor narrow claims to give the patentee something different than what he has set forth.") (internal quotes omitted).

Nonetheless, rewriting the claim language is precisely what vTRAX is asking the Court to do in its proposed construction of this limitation.  Claims 1 and 16 clearly recite "a plurality of icons … that generate hyperlinks," and to "generate" means "to bring into existence."   Exh. 18, Dictionary.com Unabridged (based on the Random House Dictionary (2011)) [5]; Exh. 19, Cambridge Advanced Learner's Dictionary[6]; Exh. 20, American Heritage Dictionary of the English Language[7].  Therefore, this limitation requires that the plurality of icons must function (*i.e.*, when clicked by a member) to bring into existence one or more hyperlinks.  Accordingly, the Court should adopt the Defendants' proposed construction which is consistent with the claim language and the undisputed definition of the word "generate."

To the contrary, vTRAX's proposed construction improperly changes the word

---

[5] Printed from http://dictionary.reference.com/browse/generate?r=66 on Jan. 21, 2011.

[6] Printed from http://dictionary.cambridge.org/dictionary/british/generate_1  on Jan. 21, 2011.

"generate" to "represent," with no basis whatsoever for this considerable change.  An icon that *generates* a hyperlink is not the same thing as an icon that merely *represents* a hyperlink.  None of the Defendants' accused products have icons on an on-call board that "generate hyperlinks," and, as such, vTRAX is now attempting to rewrite the claim language in order to salvage its infringement positions.  The Court should reject this improper attempt; vTRAX must live with the terms chosen by the patentee.  *Helmsderfer*, 527 F. 3d at 1383-84; *K-2 Corp.*, 191 F.3d at 1364.

   **K.  "plurality of additional functions associated with call tracking and resolution" (Claims 1 and 16)**

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| two or more functions, each of which is related to both call tracking and call resolution | two or more additional functions, where those functions are associated with tracking and resolving a call |

Defendants contend that the term "plurality of additional functions associated with call tracking and resolution" is indefinite.  The meaning of "associated with" in the phrase "plurality of additional functions associated with call tracking and resolution" is unclear and ambiguous because it is unclear what degree of "association" qualifies as "associated with" under the claim.  While "associated with call tracking and resolution" is likely to be met by functions that perform call tracking and resolution, it is unclear if other functions with an indirect connection to call tracking and resolution will also satisfy this claim element.  Although language of degree does not automatically render a claim indefinite, the Court "must determine whether the patent's specification provides some standard for measuring that degree." *Seattle Box Co. v. Indus. Crating & Packing*, 731 F.2d 818, 826 (Fed. Cir. 1984).  The '268 patent specification does not.

_____

(continued...)

   [7] Printed from http://education.yahoo.com/reference/dictionary/entry/generate  on Jan. 21, 2011.

The phrase is also vague and ambiguous because it is unclear whether each of the plurality of functions is associated with both call tracking and resolution, or if the plurality includes functions associated with call tracking and other functions associated with resolution.

vTRAX proposes that the term should be construed to mean "two or more additional functions, where those functions are associated with tracking and resolving a call."  This construction, rather than clarifying the meaning of "associated with" or whether each function includes call tracking and resolution, highlights the ambiguity in the claim language.

Should the Court disagree that the term is indefinite, Defendants contend, in the alternative, that "plurality of additional functions associated with call tracking and resolution" should be construed to mean:

> Two or more functions, each of which is related to both call
> tracking and call resolution.

While there is little, if any, explanation of this term in the '268 patent, Defendants submit that their proposed construction is consistent with one possible reading of the claim language.

In the present case, multiple constructions of the disputed phrase are conceivable, there is little guidance in the specification as to which is correct, and merely selecting one construction over the others does not eliminate the insoluable ambiguity in the claim language.  Accordingly, Defendants request that the Court decline to construe the phrase "plurality of additional functions associated with call tracking and resolution," recognizing that the term is indefinite.  In the alternative, Defendants request that the Court reject vTRAX's proposed construction and construe the term to mean "two or more functions, each of which is related to both call tracking and call resolution." *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.* 73 F. 3d 1573 (Fed. Cir. 1996) ("Where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a

claim having the narrower meaning, we consider the notice function of the claim to be best served by adopting the narrower meaning.").

### L.  "float board" (Claims 6, 10, 20, and 24)

| Defendants' Proposed Construction | vTRAX's Proposed Construction |
|---|---|
| a compact window, separate from the On-Call Board window, that is individualized for each user. The compact window lists the "in or out" status of a group of members that the user viewing his/her float board selects. The list includes hyperlinks to electronic mail and phone numbers for each member in the listing. | a compact listing of a user-selected group of members, including an indication of members' status and contact information |

Generally, there is a "heavy presumption" that a claim term carries its ordinary and customary meaning.  *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F. 3d 1359, 1366 (Fed. Cir. 2002); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). However, a claim term will not have its ordinary meaning if "the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history."  *CCS Fitness, Inc.*, at 1366.  Additionally, a claim term will not have its ordinary meaning if the term "chosen by the patentee so deprive[s] the claim of clarity" as to require resort to the other intrinsic evidence for a definite meaning.  *CCS Fitness, Inc.*, at 1367; *Johnson Worldwide*, at 990; *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1568 (Fed. Cir. 1997) (Because "[the disputed claim term] is a term with no previous meaning to those of ordinary skill in the prior art[,][i]ts meaning, then, must be found [elsewhere] in the patent.").

The term "float board" has no customary meaning to those of ordinary skill in the art.  As such, this term can only be construed in accordance with whatever meaning the patentees provided it in the '268 patent specification.  *CCS Fitness, Inc.*, at 1367.  The Defendants' proposed construction should be adopted by the Court because it is fully consistent with the '268

patent specification. For example, the specification includes each of following statements that give unequivocal meaning to the term "float board":

> *A Float Board provides links to email and phone numbers* for each individual on the Float Board for an individual member. Exh. 1, 1:65-67 (emphasis added).

> Shown in FIG. 2, the Float Board is a compact windowed listing of selected members that dynamically list previously defined members' "in or out", status. It contains quick contact links (phone, email, chat) without the need for the On-Call Board window 100, shown in FIG. 1, to be open. Id. at 6:62-66 (emphasis added).

> *The Float Board settings for each respective member are selected* from the Float Board Listing 300 display illustrated in FIG. 3. This template defines which members populate an individual member's respective Float Board. *A member selects which members to add to his Float Board* by selecting one or more members 302 and then clicking the "Add Staff Member(s)", button 304 in the "Add Staff Member(s)", section of the display. *Id.* at 8:28-35 (emphasis added).

By contrast, vTRAX's construction impermissibly includes certain of the "float board" features from the '268 patent specification, while ignoring others altogether. Because "float board" has no ordinary or customary meaning, allowing vTRAX to select only certain portions of the specification to breathe meaning into this term would essentially allow vTRAX to retroactively redefine the claim scope based on its current infringement and validity positions.

### M. "dynamic permissions menu" (Claims 2, 3, 17, and 18)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| a menu that displays a list of hyperlinks to features or functions that the member is authorized to access. The links that the member is not authorized to access are not displayed. | A user-specific menu displaying hyperlinks to the functions or features a member is permitted to access |

Defendants' proposed construction relies primarily on the specification. In the single passage of the specification where the term is used, the specification describes "dynamic permissions menu" as a "JavaScript menu" that "is activated by mouse clicking on the

'SIDEMENU', 110, which then expands . . . with that member's permission allowable function/feature links.  *Each link that the member has permission to access is displayed, while the links that the member does not have permission to access are not displayed.*"  Exh. 1 at 7:4-13 (emphasis added).  Accordingly, the specification unambiguously defines "dynamic permissions menu" to include links that are displayed only if the member is authorized to access the links.

In contrast, vTRAX's proposed construction, "a user-specific menu displaying hyperlinks to the functions or features a member is permitted to access," improperly ignores the specification and instead relies heavily on dictionary definitions of this term.  Rather, vTRAX's construction relies on dictionary definitions of the three individual claim terms—"dynamic," "permission," and "menu"—in an attempt to impermissibly broaden the construction.

Several courts, including the Federal Circuit, have refused to permit vTRAX's approach of combining dictionary definitions of individual words to construe a compound claim term when the individual definitions are inconsistent with the specification.  For example, the Federal Circuit in *Network Commerce, Inc. v. Microsoft Corp.* refused to combine individual dictionary definitions for "download" and "component" to construe the disputed claim term "download component" because the combined definition was inconsistent with the specification.  422 F.3d 1353, 1359-60 (Fed. Cir. 2005) (noting that "download component" had no commonly understood meaning reflected in general dictionaries or similar sources).  Similarly, the Central District of California refused to combine individual dictionary definitions for "cardiac" and "function" to construe the disputed claim term "cardiac function" because the combined definition resulted in "a broad, vague definition that is untenable in light of the specification." *Tehrani v. Polar Electro, Inc.*, Case No. 05-cv-1113, 2007 U.S. Dist. LEXIS 80037 at *18-19

(C.D. Cal. Oct. 3, 2007) (citing *Network Commerce, Inc. v. Microsoft*).

Defendants' proposed construction is drawn directly from the specification, which clearly states that "[e]ach link that the member has permission to access is displayed, while the links that the member does not have permission to access are not displayed." vTRAX's proposed construction is flawed because it ignores the specification.

Accordingly, Defendants request the Court to adopt Defendants' proposed construction of "dynamic permissions menu" and to reject the construction proposed by vTRAX.

### N.  "dynamic electronic mail" (Claims 10 and 24)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| electronic mail addressed to a group of recipients that is not static, but is instead based on the list of members currently displayed on the on-call board | electronic mail addressed to a group selected by a user |

vTRAX's construction ignores: (1) "dynamic" in the claim language; and (2) the description of dynamic as meaning the recipients list is based on the current members.

In addition to the word "dynamic" (as opposed to static) being in the claim itself, the Summary of the Invention defines "dynamic electronic mail" as "not static":

> "A Dynamic Mailing List allows for *instant selection of mailing recipients* through sorting and *is not static*."

*Id.* at 2:3-4 (emphasis added); *see also* Exh. 1 at Abstract ("A dynamic mailing list enables *instant selection of mailing recipients* through a sorting template." (emphasis added). vTRAX's construction improperly reads "dynamic" out of the claims. The specification describes "dynamic" as providing the option of choosing a mailing list out of the active members *currently* displayed on the On-Call Board:

> "When the mail icon 104[8] in the icon header section of the On-Call Board

---

[8] "Mail Icon 104" is the same as "Dynamic Email Icon 140" [sic].  Exh. 1, 8:25-29.

> 100 is selected, a *listing of On-Call Board members* defined by a sorting of the On-Call Board is sent to the Mailing List Selection on template 400 (shown in Fig. 4). This list can be further manipulated by *adding or deleting members of the member list generated by the On-Call Board*. By clicking on the "Click to Mail," button 402, a mail template is activated where all selected members can be mailed a message electronically."

*Id.* at 8:38-46 (emphasis added). vTRAX's construction allows a static, pre-generated email list, which was specifically excluded by both the claims and the specification.

### O. "personal electronic notes" (Claims 9 and 23)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| an online memo or note from one member to another member of a call center that operates without an e-mail application | comments or other information stored and presented in the form of a note made by a member |

Defendants' proposal, consistent with the words of the claim and the use in the specification, clarifies that: (1) it is an *on-line* note; (2) the note is from *one member to another*, and (2) the note operates *without email*. In contrast, vTRAX's construction is generic, broad, and unsupported by the specification; indeed it is so broad that it could be a description of, for example, a paper note card.

There are only two places in the patent specification relevant to "personal electronic notes," or as the specification describes it, "e-notes," which are described as additional call-tracking functions available to members to leave electronic notes for other members in the eCRM. First, the specification describes the member-to-member feature:

> eNote icon 116 enables a *member to leave on e-note for another member* listed on the On-Call Board 100 . . .

Exh. 1 at 8:12-13 (emphasis added). The second mention in the specification is that the note/memo is created and left without email:

> An eNote function allows for near instant updates of the Inbox column on the On-Call Board. It requires *no email application* to read the posted note. *Id.* at 8:14-16 (emphasis added).

Defendants' construction is consistent with the patent's disclosure. vTRAX's construction, basically just a note by a member, is overly broad and unrelated to the context of the specification.

### P. "profile" (Claims 9, 12, 23, and 26)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| information associated with a member including the member's company name, job title, address, telephone, location and department information | stored information about a member or customer |

Similar to the previous term, the Defendants seek a construction that is consistent with the patent disclosure, while vTRAX ignores both the claims and the specification. The claim language clearly limits "profile" to members only – each claim includes the words "member's profile." *See* Exh. 1 at claims 9, 12, 23, 26. Therefore, contrary to vTRAX's construction, profile should **not** include customer information. Second, the specification clearly defines "profile information" to include "company name, job title, address, telephone, location, and department information." *Id.* at 5:9-12. vTRAX ignores the patentee's own definition.

## IV. CONCLUSION

Defendants respectfully submit that the terms of '268 patent claims require a construction that is consistent with the actual invention as originally disclosed. One of ordinary skill in the art, considering the disputed terms in light of the patent as a whole and its prosecution history, would understand the terms to be construed in accordance with Defendants' proposed definitions. For all of the reasons set forth above, Defendants respectfully request that, to the extent the Court finds the disputed terms capable of construction and not indefinite, the Court should adopt Defendants' proposed constructions set forth above.

Dated: January 21, 2011                     Respectfully submitted,


                                            /s/ Katherine C. Donlon_____
                                            Frederic M. Meeker
                                            Email:  fmeeker@bannerwitcoff.com
                                            Christopher B. Roth
                                            Email:  croth@bannerwitcoff.com
                                            Stephanie L. Knapp
                                            Brian J. Brisnehan
                                            Daniel G. Cardy
                                            Banner & Witcoff, Ltd.
                                            1100 13th Street N.W, Suite 1200
                                            Washington, D.C. 20005
                                            Telephone:  (202) 824-3000
                                            Facsimile:  (202) 824-3001

                                            Damian M. Fletcher
                                            Arthur J. Laplante
                                            Hinshaw & Culbertson LLP
                                            One East Broward Boulevard, Suit 1010
                                            Ft. Lauderdale, Florida 33301
                                            Telephone:  954-467-7900
                                            Facsimile:  954-467-1024

                                            *Attorneys for Avaya Inc.*

                                            Katherine Claire Donlon
                                            Email: kdonlon@wiandlaw.com
                                            Wiand Guerra King P.L.
                                            3000 Bayport Drive
                                            Suite 600
                                            Tampa, FL 33607
                                            813-347-5104

                                            Michael T. Renaud
                                            Anne M. Shyjan
                                            Pepper Hamilton LLP
                                            15th Floor
                                            Oliver Street Tower
                                            125 High Street
                                            Boston, MA 02110-2736
                                            617-204-5103


                                  -31-

*Attorneys for Siemens Communications, Inc.,*
*Siemens Enterprise Communications, Inc.,*
*Assurity Life Insurance Company and*
*Flagstar Bank, FSB*

Gregory M. Hasley
Lester L. Hewitt
James L. Duncan III
Akin Gump Strauss Hauer & Feld LLP
1111 Louisiana Street
44th Floor
Houston, TX 77002-5200
713-220-5800

*Attorneys for CSX Corporation*

David Richardson Atkinson , Jr.
Gunster Yoakley & Stewart, P.A.
777 South Flagler Drive
Philips Point,
Suite 500 East
West Palm Beach, FL 33401-6194
561-655-1980

Scott Warren Dangler
Gunster Yoakley & Stewart, P.A.
Las Olas Centre
450 East Las Olas Boulevard Suite 1400
Fort Lauderdale, FL 33301-4206
954-468-1304

*Attorneys for Palm Coast Data, LLC*

<u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on January 21, 2011, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing

to all counsel of record.

_____